BEFORE THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

_____

Wendy Alison Nora,                                 Case No. 10-cv-748
    Plaintiff                                    **COMPLAINT**
    v.                                          **JURY TRIAL DEMANDED**

RESIDENTIAL FUNDING COMPANY, LLC, a Delaware limited liability company and wholly owned subsidiary of GMAC-RFC HOLDING COMPANY, LLC, a Delaware limited liability company

RFC TRUST 03 Loan Pool Number RASC2002KSSCONF is a pool of investment securities managed by RESIDENTIAL FUNDING COMPANY, LLC,

GMAC-RFC HOLDING COMPANY, LLC, a Delaware limited liability company and wholly owned subsidiary of RESIDENTIAL CAPITAL, LLC, a Delaware limited liability company,

RESIDENTIAL CAPITAL, LLC, a Delaware limited liability company, owned by GMAC MORTGAGE GROUP, LLC, a Delaware limited liability company which holds 99% interest and RESCAP INVESTMENTS, LLC, a Delaware limited liability company holds 1% interest

GMAC MORTGAGE, LLC, is a Delaware limited liability company and is a wholly owned subsidiary of ALLY FINANCIAL, INC., Delaware corporation,

HOMECOMINGS FINANCIAL, LLC is a Delaware limited liability company and is a wholly owned subsidiary of GMAC MORTGAGE GROUP, LLC, a Delaware corporation, the loan servicing duties of which were absorbed by GMAC MORTGAGE, LLC in 2009,

GMAC MORTGAGE GROUP, LLC (hereinafter "GMAC GROUP") is a Delaware corporation and is wholly owned subsidiary of ALLY FINANCIAL, INC., a Delaware corporation.

ALLY FINANCIAL, INC. is a Delaware corporation,

GMAC FINANCIAL SERVICES, a private equities group in partnership with CEREBUS CAPITAL MANAGEMENT, LP, a private equities group, from which ALLY FINANCIAL, INC. was created using U.S. Treasury TARP funds,

CEREBUS CAPITAL MANAGEMENT, LP, a private equities group, in partnership with GMAC FINANCIAL SERVICES, a private equities group,

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., a Delaware corporation

AEGIS MORTGAGE CORPORATION, a Delaware Corporation, in Chapter 11 Reorganization Proceedings in the United States Bankruptcy Court for the District of Delaware Case No. 07-11119-BLS by Notice of Claim only

GRAY & ASSOCIATES, LLP, a Wisconsin professional limited liability association,

JAY PITNER, a member of GRAY & ASSOCIATES, LLP,

MICHAEL RILEY, a member or associate of GRAY & ASSOCIATES, LLP,

WILLIAM N. FOSHAG, an associate with GRAY & ASSOCIATES, LLP,

BASS & MOGLOWSKY, S.C., a Wisconsin professional corporation,

ARTHUR MOGLOWSKY, a shareholder of BASS & MOGLOWKSY, S.C.,

DAVID M. POTTEIGER, an associate with BASS & MOGLOWSKY, S.C.,

1

PENNY M. GENTGES, a shareholder of BASS & MOGLOWKY, S.C.,
JEFFREY STEPHAN, an employee of GMAC MORTGAGE, LLC,
KENNETH URGWUADU, a former employee of GMAC MORTGAGE, LLC,
MANISH VERMA, an employee of GMAC MORTAGE, LLC,
AMY NELSON, a former employee of RESIDENTIAL FUNDING COMPANY, LLC and
YET UNNAMED CO-CONSPIRATORS,
    Defendants

_____

COMPLAINT FOR VIOLATIONS OF THE RACKETEER
INFLUENCED AND CORRUPT ORGANIZATIONS ACT AND VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
(JURY TRIAL DEMANDED)

_____

    NOW COMES the Plaintiff, and for her Complaint against the Defendants above-named and yet to be discovered, and shows the Court.

    1. This Court has jurisdiction under 28 U.S.C. sec. 1331 because the Plaintiff's claims arise under the laws of the United States of America.

    2. This Court's venue is proper under 28 U.S.C. sec. 1391(a)(2) because the acts giving rise to the claims asserted herein were taken against Plaintiff in the course of litigation based upon false documents in the Dane County Circuit Court in Madison, Wisconsin in order to take her home, which is located in Madison, Dane County, Wisconsin.

    3. Plaintiff is one of thousands of victims of violations of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. secs. 1961-1968) and the Fair Debt Collections Practices Act (15 U.S.C. sec. 1692, et seq.) by the Defendants name above, who have conspired to and engaged in direct action to, without limitation, deceive, defraud, intimidate, harass and deprive her of her Wisconsin home.

    4. RESIDENTIAL FUNDING COMPANY, LLC (hereinafter "RFC") is a Delaware limited liability company and wholly owned subsidiary of GMAC-RFC HOLDING COMPANY, LLC, a Delaware limited liability company. RFC has its primary place of business in the State of Minnesota at One Meridian Crossing, Suite 100, Minneapolis, Minnesota 55423. It uses a post office box located in Bloomington, Minnesota for its interstate fraud operations. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

    5. RFC TRUST 03 Loan Pool Number RASC2002KSSCONF (hereinafter "THE TRUST") is a pool of investment securities managed by RESIDENTIAL FUNDING COMPANY, LLC and is joined solely for the purpose of a declaratory judgment as to its interest in Plaintiff's home. The loan pool is managed by RFC and RFC's primary business located is in

the State of Minnesota. Because RFC manages the THE TRUST, it is will be served at the office of the registered agent for service of process for RFC is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808 and at One Meridian Crossing, Suite 100, Minneapolis, Minnesota 55423.

6. GMAC-RFC HOLDING COMPANY, LLC, (hereinafter "GMAC-RFC") is a Delaware limited liability company and wholly owned subsidiary of RESIDENTIAL CAPITAL, LLC, a Delaware limited liability company. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7. RESIDENTIAL CAPITAL, LLC (hereinafter "RESCAP") is a Delaware limited liability company, owned by GMAC MORTGAGE, LLC, a Delaware limited liability company which holds 99% interest and RESCAP INVESTMENTS, LLC, a Delaware limited liability company holds 1% interest. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

8. RESCAP's primary business location is at One Meridian Crossing, Suite 100, Minneapolis, Minnesota and it uses a post office box located in Bloomington, Minnesota for its interstate fraud operation.

9. GMAC MORTGAGE, LLC, (hereinafter "GMAC") is Delaware limited liability company and is a wholly owned subsidiary of GMAC MORTGAGE GROUP. Its primary business location is at One Meridian Crossing, Suite 100, Minneapolis, Minnesota and it uses a post office box located in Bloomington, Minnesota for its interstate fraud operation. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

10. HOMECOMINGS FINANCIAL, LLC is a Delaware limited liability company and is, upon information and belief, a wholly owned subsidiary of GMAC MORTGAGE GROUP, LLC, a Delaware corporation, which was absorbed by GMAC MORTGAGE, LLC in 2008 received Plaintiff's payments on her loan and charged her excessive fees and costs, refused her payments, forced her into the first foreclosure by refusing her payments, entered into a bad faith settlement agreement with her, ordered criminal trespass and damage to her home and uses a post office box located in Bloomington, Minnesota for its interstate fraud operation. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

11. GMAC MORTGAGE GROUP, LLC (hereinafter "GMAC GROUP") is a Delaware limited liablity company and is wholly owned subsidiary of ALLY FINANCIAL, INC., a Delaware corporation. It uses a post office box located in Bloomington, Minnesota for its interstate fraud operations. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

12. ALLY FINANCIAL, INC. is a Delaware corporation. It uses a post office box

3

located in Bloomington, Minnesota for its interstate fraud operations. Its registered agent for service of process is Corporation Service Company, 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

13. GMAC FINANCIAL SERVICES (hereinafter "GMAC-FS") is an international private equities group in partnership with CEREBUS CAPITAL MANAGMENT, LP, a private equities group. It has business locations in the U.S., Europe, Asia and the Middle East. Its primary business location for U.S. operations is in New York, New York. Its CEO is Michael A. Carpenter and the Summons and Complaint will be served upon Michael A. Carpenter, by personal or substituted service at Ally Financial, Inc. 200 Renaissance Center, Detroit, Michigan 48226.

14. GMAC-FS defrauded the United States Treasury by claiming to be the financing arm of General Motors but was actually substantially invested in mortgage-backed securities.

15. GMAC-FS adopted the name of ALLY FINANCIAL, INC. in 2010 in order to conceal the fact it continues to operate as a private international equities group after it received Troubled Asset Relief Funds (TARP) to capitalize a bank holding company and create a bank with taxpayer funds as part of the U.S. Treasury-supported General Motors (GM) bankruptcy reorganization.

16. GMAC-FS now purports to be what Congress and the U.S. Treasury thought it was when the TARP funds were provided, to wit, the financing arm for GM's automobiles.

17. In fact, the TARP funds were used to fund the RACKETEERING ENTERPRISE as set forth herein, to wit: the fraudulent foreclosure of hundreds of thousands of U.S. homes.

18. GMAC-FS is joined herein because it continues to exist, upon information and belief, as a shadow entity to continue to obtain and disburse U.S. Treasury TARP funds and the proceeds of unlawful foreclosures of U.S. residential properties to its unknown, largely off-shore equity beneficiaries in violation of U.S. securities regulations and prohibitions against money laundering. It is the top of the food chain of the GMAC RACKETEERING ENTERPRISE, with its partner, CEREBUS CAPITAL MANAGEMENT, LP.

19. CEREBUS CAPITAL MANAGMENT, LP (hereinafter "CEREBUS"), is a private equities group, in partnership with GMAC-FS is a private equities group which defrauded the U.S. Treasury with its partner GMAC-FS by claiming own an interest in General Motors but was actually substantially invested in mortgage-backed securities. It has business locations in the U.S., Europe, Asia and the Middle East. Its primary business location for U.S. operations is in New York, New York. Its CEO is Stephen A. Feinberg who will be served with the Summons and Complaint by personal or substituted service on Stephen A. Feinberg at CEREBUS offices located at 299 Park Ave., New York, New York 10171.

20. The interests of CEREBUS [which is named for the mythical Greek three-headed

4

dog that guards the gates to Hades (a/k/a Hell] continues to exist with its equity partner, GMAC-FS and is joined herein because, upon information and belief, it engaged in the GMAC RACKETEERING ENTERPRISE in order to take U.S. Treasury Funds and the receipts from unlawful foreclosures on U.S. residential property to its unknown off-shore equity beneficiaries. It is the top of the food chain of the GMAC RACKETEERING ENTERPRISE, with its partner, GMAC-FS.

21. The parties identified in paragraphs 4., 5., 6., 7., 8., 9., 10., 11.., 12., 13., 19., 22., 25., 26., 27., 40., 42., 50., 54., 58., 60., 65., 69., 77., and 82.,  above and below, will be referred to collectively, from time to time,  as the GMAC RACKETEERING ENTERPRISE, with which the remaining named and unnamed parties conspired to cause Plaintiff's injuries and damages and to procure hundreds of thousands of foreclosure titles to U.S. home, with the attendant damages to each family thereby foreclosed.

22. AEGIS MORTGAGE CORPORATION (hereinafter "AEGIS") is a Delaware Corporation which has been in Chapter 11 Reorganization Proceedings in the United States Bankruptcy Court for the District of Delaware Case No. 07-11119-BLS since August 13, 2007.

23. AEGIS is being served by Creditor Notice of Appearance and Request for Notice and Notice of Claim in the bankruptcy proceedings.  AEGIS is protected from this action by the Automatic Stay.  Plaintiff would have to move to Lift the Automatic Stay in order to bring AEGIS before this Court.   (See attached Exhibit A.)

24. MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (hereinafter  "MERS") is a Delaware Corporation which was created for the purpose of defrauding homeowners (as to the identity of the holders of promissory notes and mortgages), courts (as to the real parties in interest in mortgage foreclosures), and local municipalities (in avoiding recording fees on mortgage assignments in the sum of billions of dollars nationwide) which conspired with the GMAC RACKETEERING ENTERPRISE to defraud Plaintiff, the Wisconsin Courts and the Dane County Register of Deeds. It has registered twice with the Delaware Secretary of State.  It will be served upon both of its registered agents for service of process: Prentice-Hall Corporation System Inc., 2711 Centerville Road, Suite 400, Wilmington Delware 19808 for its 1995 entity and Corporation Trust Company, Corporation Trust Center, 1209 Orange Street,  Wilmington, Delaware 19808 for its 1999 entity.

25. AEGIS participated in the GMAC RACKETEERING ENTERPRISE to the limited extent of being the "table funder" to provide  MERS.with Plaintiff's promissory note and mortgage.  MERS was formed for the purposes described at paragraph 24., above.

26. GRAY & ASSOCIATES, LLP, (hereinafter "FORECLOSURE MILL #1) is a Wisconsin professional limited liability association located in the metropolitan area of Milwaukee, Wisconsin and engages in a type of practice of law which has become known in commercial parlance as a foreclosure mill.  GRAY & ASSOCIATES, LLP will, from time to

5

time herein, be referred to as FORECLOSURE MILL #1 and is part of the GMAC RACKETEERING ENTERPRISE because it directly engaged in the racketeering activities. It will be served with process upon its registered agent, Duncan Delhey, personally or by substituted service, at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

27. JAY PITNER, (hereinafter "PITNER") a member of GRAY & ASSOCIATES, LLP and is an adult resident of the State of Wisconsin. He will be served personally or by substitution of service at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

28. PITNER prepared and recorded a fraudulent assignment of mortgage to RFC, executed by the now-famous robo-signer, JEFFREY STEPHAN and his trainer, KENNETH URGWUADU, both of whom were GMAC.Mortgage, LLC employee and both of whom fraudulently signed on behalf of MERS as mortgagee of record for AEGIS on January 6, 2010. (See Attached Exhibit B)

29. The purpose of the fraudulent assignment of mortgage, as is the practice of the GMAC RACKETEERING ENTERPRISE in thousands of foreclosure actions commenced throughout the U.S., is deceive and defraud the homeowner, homeowner's legal counsel, if any, the courts, the Registers of Deeds and the public by fabricating a secured interest in homes where the GMAC RACKETEERING ENTERPRISE knows that it does not have lawful assignments of mortgages.

30. PITNER created the assignment of mortgage purporting to be assigned from MERS on behalf of AEGIS to RFC specifically to commence foreclosure proceedings against the Plaintiff who knew that MERS did not have standing to foreclose against her home. In so doing he was a direct participant in the GMAC RACKETEERING ENTERPRISE.

31. PITNER knew or should have known that AEGIS was then and there in bankruptcy and could not have lawfully transferred any interest to RFC without approval of the Delaware Bankruptcy Court.

32. PITNER knew that MERS did not have the rights to assign any greater interest than it had as a mere nominee of AEGIS and therefore it had to appear that AEGIS authorized MERS to assign the Plaintiff's mortgage to RFC.

33. PITNER knew that JEFFREY STEPHAN and KENNETH URGWAUDU were not in the employ of MERS and were not "Vice President" an "Assistant Secretary" of MERS respectively.

34. It is clear from the face of Exhibit B that the fraudulent assignment of a bankrupt's party's interest was barred by the automatic stay.

35. It was eventually discovered by Plaintiff in late September, 2010 that the assignment (Exhibit B) was fraudulently executed by GMAC employees and was not an unlawful assignment

6

of the bankrupt AEGIS' asset.

36. It is an essential element of of the GMAC RACKETEERING ENTERPRISE's pattern of conduct to deceive and defraud homeowners, courts and the courts and to conceal and obfuscate the identities of the owners of mortgage instruments.

37. The concealment and obfuscation includes a plan to defraud homeowners and courts using the concept of "holder in due course" to pretend that the successive imaginary mortgagees paid market value for the mortgage interest and take the interest without liability for claims against prior mortgagees.

38. As will be demonstrated below, the "holder in due course" fraud is created merely by using rubber stamps to create the impression that the note and mortgage have been transferred "without recourse" when in fact, in Plaintiff's case and thousands of other cases, the mortgage interests were placed into trusts consisting of mortgage backed securities and recreated as collateralized debt obligations and were not otherwise transferred to "holders in due course."

39. The fraudulent document passed off as the assignment of Plaintiff's mortgage was executed by a Pennsylvania notary. MERS is located in Reston, Virginia, but this fact was concealed from Plaintiff because the face of the assignment states that JEFFREY STEPHAN was "Vice President" of the assignor MERS signing on behalf of AEGIS and KENNETH URGWUADU held himself out as "Assistant Secretary" of MERS signing on behalf of AEGIS.

40. JEFFREY STEPHAN was revealed to be a GMAC RACKETEERING ENTERPRISE robo-signer and is an adult resident of the State of Pennsylvania. He is employed by GMAC Mortgage, LLC in its Fort Washington, Pennsylvania office and will be served with process, personally or by substitution of service at GMAC Mortgage, 1100 Virginia Drive, Fort Washington, Pennsylvania. His home address is 42 Lenape Drive, Sellersville, Pennsylvania 18960.

41. JEFFREY STEPHAN and was trained to be a robo-signer by GMAC RACKETEERING ENTERPRISE employee KENNETH URGWUADU in the deposition taken by Attorney Thomas Cox in the Maine state court foreclosure action entitled <u>GMAC v. Bradbury, et al.</u>, on June 7, 2010. That deposition is attached hereto in its entirety as Exhibit C-1 and constitutes an admission that STEPHAN and URGWAUDU were employees of the GMAC RACKETEERING ENTERPRISE, signing thousand of fraudulent assignments of mortgages each month.

42. KENNETH URGWUADU is an adult resident of the State of Pennsylvania and a former employee of GMAC MORTGAGE, LLC. His home address is 1730 Ferndale Ave., Fl-1, Abington, Pennsylvania 19001.

43. The Bradbury deposition (Exhibit C-1) refers to an earlier deposition taken in the Florida state court foreclosure action entitled <u>GMAC v. Neu, et al.</u> That deposition, taken on

December 10, 2009  is an admission by an employee of the GMAC RACKETEERING ENTERPRISE that STEPHAN signed as Vice-President or Assistant Secretary of MERS even though he was not associated in any way with MERS.  The attached portion of that deposition (Exhibit C-2) plainly states this aspect of the GMAC RACKETEERING ENTERPRISE and conclusively proves that Exhibit B, which was submitted to the Dane County Circuit Court, the Dane County Register of Deeds and the Plaintiff was and is a fraudulent document created for the the continuing GMAC RACKETEERING ENTERPRISE of committing fraud on Plaintiff, the courts, the Register of Deeds and the public.

44.  The Bradbury and Neu depositions conclusively demonstrate that the GMAC RACKETEERING ENTERPRISE committed thousands of identical frauds throughout the nation for the purpose of taking homes in foreclosure using fraudulently documents.

45.  The Bradbury robo-signing deposition became national news in September, 2010.

46.  Plaintiff herself had been denied discovery by deposition in the second foreclosure case by an incomprehensible order of the state court judge which stayed **all** discovery because he was "too busy" to rule on the GMAC RACKETEERING ENTERPRISEs' Motion to Quash Subpoenas Duces Tecum.

47.  Therefore, Plaintiff could not have discovered that the assignment was fraudulent until the deposition of STEPHAN taken by Attorney Thomas Cox was released to the media in late September, 2010.

48.   Plaintiff immediately notified the lawyers at Foreclosure Mills #1 of the nationally-reported proof of the fraud being perpetrated against her and thousands of other homeowners.  She notified them on September 27, 2010 and asked them to cease and desist from proceeding on the fraudulently procured Summary Judgment, in which the false and fraudulent assignment of mortgage was submitted with the Complaint.

49.   Nevertheless, Foreclosure Mill #1 and #2, which are a part of the GMAC RACKETEERING ENTERPRISE,  have taken no action to dismiss the fraudulently documented foreclosure proceedings against the Plaintiff.

50. MICHAEL RILEY, (hereinafter "RILEY") is a  member or associate of Foreclosure Mill #1 and is an adult resident of the State of Wisconsin. He will be served personally or by substitution of service at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

51.  RILEY and FORECLOSURE MILL #1 commenced a foreclosure action against Plaintiff in the name of MERS in 2003.

52.  RILEY settled the dispute by false promises on behalf of MERS, knowing that MERS did not have the authority to settle the claim in furtherance of the racketeering conspiracy.

53. RILEY refused to accept Plaintiff's payments into GRAY's Attorney Trust Account pending resolution of the dispute over the settlement agreement, thereby creating the appearance of Plaintiff defaulting on the settlement agreement, whereas the settlement agreement was a fraud ab initio.

54. WILLIAM N. FOSHAG (hereinafter "FOSHAG") is an associate with GRAY & ASSOCIATES, LLP and is an adult resident of the State of Wisconsin. He will be served personally or by substitution of service at 16345 W. Glendale Drive, New Berlin, Wisconsin 53151.

55. FOSHAG refused to accept Plaintiff's payments into FORECLOSURE MILL #1's Attorney Trust Account pending resolution of the dispute over the settlement agreement, thereby creating the appearance of Plaintiff defaulting on the settlement agreement, whereas the settlement agreement was a fraud ab initio.

56. FOSHAG appeared on behalf of FORECLOSURE MILL #1 to oppose the rescission of the fraudulently procured settlement agreement described at 16., above, in furtherance of the GMAC RACKETEERING ENTERPRISE.

57. PITNER, of FORECLOSURE MILL #1, created the fraudulent assignment of mortgage in order to commence a second foreclosure proceeding against the Plaintiff as is plainly evident by the fraudulent assignment (Exhibit B) itself. It states Document Prepared by JAY PITNER/GRAY & ASSOCIATES, L.L.P.

58. BASS & MOGLOWSKY, S.C. is a Wisconsin professional corporation, located in the metropolitan area of Milwaukee, Wisconsin and engages in a type of practice of law which has become known in commercial parlance as a foreclosure mill. BASS & MOGLOWSKY, S.C. will, from time to time herein, be referred to as FORECLOSURE MILL #2. The registered agent for service of process Steven W. Moglowsky with an address of 7020 N. Port Washington Road, Suite 206, Milwaukee, Wisconsin 53217. The data for the registered agent is out-dated with the Wisconsin Department of Financial Institutions and FORECLOSURE MILL #2 is 501 West Northshore Drive Suite 300, Milwaukee, Wisconsin 53217 and Steven W. Moglowsky will be served at that address.

59. When Plaintiff observed that the promissory note attached to the second Complaint for foreclosure against her home was identical to the promissory note recorded with the Dane County Register of Deeds and was endorsed by Aegis Mortgage Corporation, she moved to dismiss the second foreclosure brought by FORECLOSURE MILL #1. (Exhibit D.)

60. ARTHUR MOGLOWSKY (hereinafter "MOGLOWSKY") is a shareholder of BASS & MOGLOWKSY, S.C. and is an adult resident of the State of Wisconsin. He will be served, personally or by substitution of service, at 501 West Northshore Drive Suite 300, Milwaukee, Wisconsin 53217.

61. MOGLOWSKY and FORECLOSURE MILL #2 became co-counsel with FORECLOSURE MILL #1 in furtherance of the GMAC RACKETEERING ENTERPRISE.

62. MOGLOWSKY argued to the Dane County Circuit Court that Plaintiff's promissory note had been endorsed "in blank," notwithstanding the endorsement in favor of AEGIS .

63. MOGLOWSKY knew that the note was endorsed by AEGIS that the note was not the type of instrument which could be endorsed in blank as shown by paragraphs 64., 65., 66., 67., 68., 69., 70., 71,. 72., 74. and 78., below, along with all other allegations related to the forged promissory note.

64. MOGLOWSKY made the "endorsed in blank" argument in furtherance of the GMAC racketeering conspiracy to mislead the court in order to complete the second attempted foreclosure on Plaintiff's home.

65. DAVID M. POTTEIGER, (hereinafter "POTTEIGER") is an associate with BASS & MOGLOWSKY, S.C. and is an adult resident of the State of Wisconsin. He will be served, personally or by substitution of service, at 501 West Northshore Drive Suite 300, Milwaukee, Wisconsin 53217.

66. On June 17, 2010, contrary to the "endorsed in blank" argument of MOGLOWSKY, POTTEIGER provided Plaintiff with the attached Exhibit E in furtherance of the GMAC RACKETEERING ENTERPRISE.

67. Exhibit E is the second promissory note and is a badly photo shopped fraudulently created promissory note which is intended to defraud the Plaintiff and the Court that the promissory note was endorsed in favor of Residential Funding Corporation. It is clear that the previous endorsement in favor of the bankrupt AEGIS on Exhibit D, that the endorsement has has been recreated to contain appear to be an endorsement to Residential Funding Corporation. The AEGIS endorsement is overwritten and disappeared form the face of Exhibit E.

68. The second promissory (Exhibit E) also contains a fraudulently created endorsement from JPMorgan Chase Bank as Trustee in favor of Residential Funding Corporation which is wholly unnecessary in the endorsement chain because there is no purported endorsement from Residential Funding Corporation to JP Morgan Chase Bank as Trustee.

69. AMY NELSON, (hereinafter "NELSON") is a former employee of RESIDENTIAL FUNDING COMPANY, LLC and is an adult resident of the State of Minnesota. RFC is liable for the acts of NELSON in her capacity as its employee. NELSON will be served by personal or substitution of service at her current employment with HOME SAVINGS AMERICA: MINNESOTA at 35 East Broadway in Little Falls, Minnesota 56345. The home address of NELSON is being investigated. AMY NELSON is a very common name in Minnesota and she did not use her middle initial. She may live in Elk River, Minnesota or Champlin, Minnesota. If she cannot be served, it is not necessary for her to be served because RFC is liable for her

fraudulent actions.

70. Exhibit E takes the fraudulently created endorsement to JP Morgan Chase Bank as Trustee which is out of the chain of endorsements, the newly created endorsement already having been concocted to cover the endorsement in favor of the bankrupt AEGIS with the name of Residential Funding Corporation one step further.

71. Attached to the second promissory note (Exhibit E) is an allonge signed by Amy Nelson, fraudulently holding herself out as "Assistant Vice President of Bank of New York Trust Company as successor to JP Morgan Chase Bank, N.A. as Trustee and Residential Funding Company, LLC f/k/a Residential Funding Corporation, Attorney in Fact."

72. NELSON was at that time an employee of RFC and was not an Assistant Vice President of Bank of New York Trust Company, N.A., nor was she Assistant Vice President of RFC.

73. NELSON, STEPHAN and URGWUADU were all employees of the GMAC RACKETEERING ENTERPRISE.

74. None of the endorsements on the second promissory note contain any dates or warranties of authority, nor is a power of attorney attached.

75. Exhibit F plainly shows that the GMAC RACKETEERING ENTERPRISE had taken the note endorsed only by AEGIS and put it into the "Trust" soon after the fraudulent transaction between Plaintiff and AEGIS closed.  AEGIS' role in the GMAC RACKETEERING ENTERPRISE is described above.

76. As evidence of scienter, Plaintiff's access to the computer registration on the MERS system was blocked shortly after she presented the MERS data (Exhibit F) to the Dane County Circuit Court in connection with a renewed Motion to Dismiss the fraudulent foreclosure filed by Plaintiff on the basis of the forged promissory note provided to her by POTTEIGER.

77. PENNY M. GENTGES (hereinafter "GENTGES") is a shareholder of BASS & MOGLOWSKY, S.C.  She will be served, personally or by substitution of service, at 501 West Northshore Drive Suite 300, Milwaukee, Wisconsin 53217.

78. GENTGES acted in furtherance of the GMAC RACKETEERING ENTERPRISE by moving to lift the automatic stay in Plaintiff's subsequently filed bankruptcy proceedings, knowing that RFC did not have a lawfully endorsed promissory note nor a lawful assignment of the AEGIS mortgage of which MERS was the mere nominee.  She presented a version of the forged note (Exhibit E) in connection with the GMAC RACKETEERING ENTERPRISE's Motion to Lift the Stay in Plaintiff's bankruptcy case in the Western District of Wisconsin in Case No. 01-09-16622.

78. As evidence of scienter, GENTGES refused to file a claim in the name of RFC in the Plaintiff's bankruptcy proceedings, knowing that to do so would constitute federal crimes of bankruptcy fraud, although she should have known that racketeering is a federal crime.

79. The GMAC RACKETEERING ENTERPRISE which includes its racketeering FORECLOSURE MILLS #1 AND #2 continue to proceed to take Plaintiff's home, notwithstanding the overwhelming evidence of their fraud, racketeering and unfair debt collection practices.

80. JEFFREY STEPHAN (hereinafter "STEPHAN") is an employee of GMAC MORTGAGE, LLC who participated in the RACKETEERING ENTERPRISE by signing the assignment of mortgage in Plaintiff's case as Vice President of MERS, knowing that he was not an employee of MERS nor its Vice President.

81. KENNETH URGWAUDU (hereinafter "URGWUADU") is a former employee of GMAC MORTGAGE, LLC who participated in the RACKETEERING ENTERPRISE by training STEPHAN to robo-sign and claiming to be Assistant Secretary of MERS, knowing that he was not an employee of MERS nor its Assistant Secretary.

82. MANISH VERMA (hereinafter "VERMA") is an employee of GMAC MORTGAGE, LLC who signed an Affidavit in Support of Summary Judgment prepared by POTTEIGER who filed it in the GMAC RACKETEERING ENTERPRISE's second foreclosure lawsuit against the Plaintiff in furtherance of the frauds.

83. VERMA is an adult resident of the State of Pennsylvania and will be served with process, personally or by substitution of service at GMAC Mortgage, 1100 Virginia Drive, Fort Washington, Pennsylvania. His home address is 42 Lenape Drive, Sellersville, Pennsylvania 18960.

83. The VERMA Affidavit is perjurious in many respects, including the concocted amount of the Plaintiff's alleged indebtedness of which he claimed personal knowledge and VERMA swore under oath that the second promissory note is a true and correct copy of the original promissory note signed by the Plaintiff.

84. POTTEIGER prepared the perjurious Affidavit for VERMA's signature after telling Plaintiff that all he had to do to take her home was to prepare an Affidavit stating that the promissory note was a true and correct copy of the original promissory note and she could not disprove the facts asserted in the Affidavit that POTTEIGER and VERMA conspired to prepare in furtherance of the GMAC RACKETEERING ENTERPRISE.

85. Plaintiff repeatedly sought the production of the original promissory note, which was never produced.

86. FORECLOSURE MILL #1 and FORECLOSURE MILL #2 and its named individual

12

attorneys acted at all times in furtherance of the GMAC RACKETEERING ENTERPRISE.

87. POTTEIGER, acting in conspiracy with VERMA, prevented GMAC Mortgage, LLC from providing Plaintiff with a loan modification under the HAMP Program.

88. POTTEIGER issued FORECLOSURE MILL #2's own trust account check to return Plaintiff's first payment under the HAMP modification offered to her by GMAC Mortgage, LLC.

89. GENTGES falsely represented to the Wisconsin bankruptcy court that HAMP was a voluntary program, whereas all TARP funded entities are required to use all reasonable efforts to keep homeowners in their homes.

90. Plaintiff was at all times ready, willing and able to participate in the HAMP program pending determination of whether or not the promissory note and mortgage were lawfully endorsed and assigned, which they clearly were not.

92. POTTEIGER's action in returning the Plaintiff's first HAMP program and canceling her HAMP process was undertaken in furtherance of the GMAC RACKETEERING ENTERPRISE.

93. UNNAMED CO-CONSPIRATORS may be subsequently joined as their identities are uncovered through discovery in accordance with the Federal Rules of Civil Procedure

94. GRAY AND ASSOCIATES, LLP, PITNER, RILEY, FOSHAG, BASS & MOGLOWSKY, S.C., MOGLOWSKY, POTTEIGER and GENTGES are not entitled to qualified immunity from suit for their actions as the legal representatives of the GMAC RACKETEERING ENTERPRISE because there actions were fraudulent and lawyers enjoy no immunity from suit by the opposing party for fraudulent conduct in legal proceedings.

95. Plaintiff immediately notified the lawyers at FORECLOSURE MILLS #1 AND #2 of the nationally-reported proof of the fraud being perpetrated against her and thousands of other homeowners. She notified them on September 27, 2010 and asked them to cease and desist from proceeding on the fraudulently procured Summary Judgment, in which the false and fraudulent assignment of mortgage was submitted with the Complaint.

96. The GMAC RACKETEERING ENTERPRISE continues to proceed to take Plaintiff's home and thousands of other homes on the basis of false, fraudulent and perjured documents, while making false and misleading statements to Plaintiff, the courts, the Congress, regulatory agencies and the United States Treasury.

97. From the date AEGIS took Plaintiff's promissory note and mortgage on June 5, 2002 and nominated MERS as the register of Plaintiff's mortgage, the GMAC RACKETEERING ENTERPRISE intentionally and fraudulently concealed their unlawful conduct and the existence of their enterprise from the Plaintiff and intended to keep their unlawful activities secret from the

Plaintiff, all homeowners affected by similar frauds, the courts and the public.

98. The GMAC RACKETEERING ENTERPRISE engaged in its fraudulent conduct which, by its nature, is inherently self-concealing and when Plaintiff would discover one layer of the fraudulent activity, the racketeering enterprise would create knew fraudulent and perjured documents to continue the practice of fraudulent concealment of the enterprise in an effort to avoid detection.

99. By virtue of the fraudulent concealment by the GMAC RACKETEERING ENTERPRISE, the date from which the statute of limitations on any claim arising from any part of the scheme to defraud did not commence until the fraud was discovered in sufficient detail to allow the proper pleading of the racketeering frauds.

100. Additionally, each act of fraud has a statute of limitations of six (6) years from the date of discovery thereof.

101. Plaintiff has discovered more of entire racketeering fraud scheme when the Bradbury deposition was made public (and referred to the Neu deposition) at the end of September, 2010. (Exhibits C-1 and C-2)

102. As evidence of scienter, the GMAC RACKETEERING ENTERPRISE sought a protective order from the Maine court in <u>GMAC v. Bradbury, et al.</u> to prevent the disclosure of the Bradbury deposition, which protective order was denied and sanctions awarded to Bradbury for the frauds.

103. The GMAC RACKETEERING ENTERPRISE changed names of its various entities in furtherance of the racketeering enterprise to conceal its operations.

104. Plaintiff was accidentally notified of the multiple racketeering fictitious entities which are involved in the GMAC RACKETEERING ENTERPRISE by a privacy rights notice mailed from the post office box in Bloomington, Minnesota and listing the Defendant fictitious entities and numerous other fictitious entities associated with the GMAC RACKETEERING ENTERPRISE on or about March 3, 2010.

105. The disclosure described at paragraph 104., above, was insufficient to determine the relationship between the tentacles of the racketeering enterprise and Plaintiff was ultimately informed of the relationship of the aspect of the GMAC RACKETEERING ENTERPRISE responsible for the frauds being committed against her by the filing of a corporate disclosure form filed in the Seventh Circuit Court of Appeals by RFC and GENTGES in October, 2010.

106. The disclosure form referred to in paragraph 105 is still incomplete, but did allow sufficient identification of the multiply concealed identities for Plaintiff to form this Complaint, along with information from her own records.

107. As part of the GMAC RACKETEERING ENTERPRISE, Plaintiff's efforts to make payments to the real party entitled thereto were repeated refused by RILEY, FOSHAG, POTTEIGER and GENTGES.

108. As part of the GMAC RACKETEERING ENTERPRISE, false late fees, false and excessive property insurance payments, attorneys' fees for the racketeering enterprise, payment of real estate taxes in violation of the 2004 settlement agreement which Plaintiff sought to rescind for fraud, excessive interest, interest on the accumulating false charges were added to the Plaintiff's alleged indebtedness to the real party in interest which is still concealed by the fraud.

109. As an additional part of the GMAC RACKETEERING ENTERPRISE, the Plaintiff's payments to the racketeering enterprise were never credited to the loan obligation claimed on behalf of a yet unknown party in interest, believed to be RFC TRUST 03 Loan Pool Number RASC2002KSSCONF is a pool of investment securities managed by RESIDENTIAL FUNDING COMPANY, LLC.

110. As a further part of the GMAC RACKETEERING ENTERPRISE, RFC de-registered its securities to prevent the Securities Exchange Commission, the investors in the mortgage backed securities and the public from knowing the status of the fraudulently administered loans.

111. The de-registration of the RFC securities took place after Moody's discovered commingling of funds by RFC in conflict with the investors in the investment trusts and is further evidence of the fraud scheme of the GMAC RACKETEERING ENTERPRISE.

**FIRST CAUSE OF ACTION:**
**RACKETEERING**

112. Plaintiff re-incorporates paragraphs 1. through 93. and specifically pleads that this court has jurisdiction over these proceedings under the Racketeer Influenced and Corrupt Organizations Act (RICO) at 18 U.S.C. secs. 1961-1968.

113. The facts set forth herein establish the GMAC RACKETEERING ENTERPRISE which creates false, fraudulent and perjured documents in order to defrauds homeowners, such as the Plaintiff, the Registers of Deed and the courts in order to fraudulently foreclosure on homes and to inflict injury and damages upon homeowners through a course of patten of conduct established for that purpose.

114. More than two acts of fraud as part of the GMAC RACKETEERING ENTERPRISE have been committed in Plaintiff's case alone.

115. Thousands of acts of fraud are established by the depositions attached hereto as Exhibit C-1 and C-2.

15

116. In the course of its RACKETEERING ENTERPRISE, the Defendants committed mail fraud.

117. Plaintiff is entitled to treble damages pursuant to 18 U.S.C. sec. 1964( c)and all other relief available under 18 U.S.C. sec. 1961-1968.

118. Because of the extent of the fraud, Plaintiff was required to take time from other clients' cases to discover and disclose the frauds complained of herein and she should be allowed her actual attorney's fees for time spent on her own case as further damages.

119. Plaintiff has incurred court costs and litigation expenses over the eight (8) years that she has been subjected to the GMAC RACKETEERING ENTERPRISE.

120. Plaintiff is also entitled to actual attorney's fees under the RICO Act if she chooses to retain co-counsel.

121. Plaintiff is entitled to costs and disbursements in this action.

## SECOND CAUSE OF ACTION:
## VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT ("FDCPA")

122. Plaintiff re-incorporates paragraphs 1. through 93.

123. Defendants are debt collectors as defined by 15 U.S.C. sec. 1692a(6).

124. Defendants filed false, deceptive, misleading and perjured documents in connection with the collection of Plaintiff's alleged debt in violation of 15 U.S.C. sec. 1692e.

125. Plaintiff suffered actual damages from the violations of the FDCPA and is also entitled to statutory damages and reasonable attorney's fees, should she retain co-counsel.

126. Because of the extent of the fraud, Plaintiff was required to take time from other clients' cases to discover and disclose the frauds complained of herein and she should be allowed her actual attorney's fees for time spent on her own case as further damages.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(a) of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial to all issues triable to by a jury.

**WHEREFORE**, Plaintiff requests the following relief:

1. Awarding Plaintiff her home free and clear of the fraudulent claim of the GMAC RACKETEERING ENTERPRISE;

2. Granting Plaintiff an injunction against the continuation of the GMAC RACKETEERING ENTERPRISE effort to take her home;

3. Awarding Plaintiff a declaratory judgment that RFC TRUST 03 Loan Pool Number RASC2002KSSCONF is a pool of investment securities managed by RESIDENTIAL FUNDING COMPANY, LLC is not entitled to any payment from Plaintiff due to the fraud perpetrated upon her by RFC Trust 03 or, in the alternative, declaring that the loan pool is obviously unsecured.

4. Awarding Plaintiff her actual damages for losses compensable for violation of FDCPA;

5. Awarding Plaintiff treble damages for violations of RICO for all of her losses, including but not limited to, pain and suffering, loss of economic opportunity, loss of prospective economic opportunity, payment for attorney's fees for her own time as an attorney in defending against the GMAC RACKETEERING ENTERPRISES and extensive litigation costs incurred over a period of eight (8) years of the continuing defense against the GMAC RACKETEERING ENTERPRISE.

6. Awarding Plaintiff statutory damages under FDCPA pursuant to 15 U.S.C. sec. 1692k.

7. Awarding Plaintiff all costs of litigation against the GMAC RACKETEERING ENTERPRISE over the period of eight (8) years.

8. Awarding Plaintiff her attorneys' fees for any attorney whom she may hire to assist her in these proceedings under RICO and FDCPA and her own fees as an attorney for prosecuting this matter for a punitive damages award for the benefit of victims of the GMAC RACKETEERING ENTERPRISE.

9. Ordering joint and several liability against each and all of the members of the GMAC RACKETEERING ENTERPRISE, excluding AEGIS, but limiting the liability of the Wisconsin Foreclosure Mills to Plaintiff's damages and share of punitive damages.

10. A Punitive damages in the amount of $10,000,000,000.00 in order to fully deter the GMAC RACKETEERING ENTERPRISE from continuing its frauds throughout the nation and ordering that the punitive damages be paid from its cash reserves, exclusive of any federal bail out funding.

11. Ordering that the first amount of the punitive damages award up to the amount of an amount to be determined to be a fair allocation of the punitive damages award to Plaintiff and that the remaining balance of the up to $10,000,000,000.00 be paid to a Trust Fund to be administered for the benefit of all persons whose homes were taken by the GMAC RACKETEERING ENTERPRISE to a Trustee appointed by the Court (such a Kenneth Feinberg who administered the 911 settlement and is administering the Gulf Oil Spill settlement) to be distributed pro rata to the fraud victims on the basis of the fair market value of the homes

unlawfully taken by the GMAC RACKETEERING ENTERPRISE.

12. Excluding from the Trust Fund distribution all homeowners who recover funds in other actions and class action to the extent of their compensation from such actions up to the amount of the pro rata share which would be distributed from the Trust Fund.

13. Ordering that the balance of the punitive damages award, after Plaintiff's fair share, be paid to the Trust Fund be deposited in insured accounts in banks and credit unions in the State of Wisconsin, except that no Wisconsin bank which has received TARP funding and failed to comply with HAMP policies shall be entitled to receive any such deposit.

14. Ordering the Trustee to provide public notice in the <u>Wall Street Journal</u> of the availability of the Trust Fund for compensation to victims of the GMAC RACKETEERING ENTERPRISE and to provide such other notice of the funds available for compensation as the Court may deem sufficient to provide adequate notice of the victims' rights to distributions from the Trust Fund.

15. Ordering the appointed Trustee to make bi-annual reports to the Court until the funds are fully distributed.

16. Ordering the remainder, if any, of the balance of the Trust Funds be paid to the Community Investment Credit Corporation, a Wisconsin corporation, for the purpose of improving the business economy in the State of Wisconsin up to the amount of $20,000,000.00 and any further remaining balance to be paid to non-profit legal assistance programs throughout the State of Wisconsin by the State Bar of Wisconsin, in its sole discretion.

17. For such other relief as may be just and appropriate in these premises.

Dated at Minneapolis, Minnesota this 29th day of November, 2010.

*/s/ Wendy Alison Nora*

_____
Wendy Alison Nora
4575 W. 80th Street Circle, #141
Bloomington, Minnesota 55437
VOICE (952) 405-8631
FAX (952) 405-8691
accesslegalservices.bky@gmail.com